U.S. DISTRICT COURT * WESTERN DISTRICT OF LOUISIANA * MONROE DIV.

| | |
|---|---|
| RSBCO | CIVIL ACTION NO_____ |
| versus | JUDGE:_____ |
| USA | MAGISTRATE JUDGE _____ |

RSBCO's COMPLAINT

Plaintiff, RSBCO, by and through counsel, respectfully submits this Complaint for Refund against Defendant United States of America.

<u>PARTIES, JURISDICTION, & VENUE</u>

1.      RSBCO is a Louisiana partnership whose principal office is located at 500 E. Reynolds Drive, Ruston, Louisiana 71270.

2.      Defendant is the United States of America ("USA") and will be served by mailing a copy of this Complaint and summons by certified mail, return receipt requested, to (i) Alexander C. Van Hook, Acting U.S. Attorney for the Western District of Louisiana, 300 Fannin St., Shreveport, Louisiana 71101; (ii) The Honorable Merrick Garland, Attorney General of the United States, United States Department of Justice, 950 Pennsylvania Ave. NW, Washington, DC 20530-0001; and (iii) Charles P. Rettig, Commissioner of the Internal Revenue Service ("IRS"), 1111 Constitution Ave., NW, Washington, DC 20224.

3.      This is a civil action arising under 26 U.S.C. § 7422. RSBCO seeks a refund of federal tax penalties paid by RSBCO in the amount of $579,198.37 plus interest, or such other amounts as in law and in fact, are ultimately recoverable.

4.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1).

5.      Venue is proper in this Court under 28 U.S.C. § 1402(a)(1).

6.      The Western District is proper according to 28 U.S.C. § 98(c).

7.      The Monroe Division is proper according to LR77.3.

<u>ADMINISTRATIVE PROCEEDINGS</u>

8.     On August 4, 2014, the IRS provided  RSBCO with a notice proposing a penalty of $510,700 (the "Penalty") pursuant to 26 U.S.C. § 6721 for the allegedly late filing of certain corrected returns (the "Information Returns") in tax period 2012.

9.     The Penalty was composed of (1) $10,700 in penalties related to missing or incorrect TINs and (ii) $500,000 in penalties for the allegedly late re-filing of corrected information returns. Restated, the Penalty was not issued due to any failure to pay, or late payment of, any money.

10.    In fact, the Information Returns were even filed timely. However, it is alleged by the USA that those timely filed returns contained information that was corrupted in transmission.

11.    The IRS assessed and processed the Penalty against the RSBCO on October 12, 2015.

12.    On January 25, 2018, RSBCO received a "Final Notice - Notice of Intent to Levy and Notice of Your Rights to a Hearing" from IRS Revenue Officer Jason Leonard.

13.    The Final Notice stated that the amount of the Penalty had increased to $557,633.[73].

14.    On February 23, 2018, RSBCO filed a Form 12153 requesting a Collections Due Process Hearing with the IRS.

15.    RSBCO supplemented its Form 12153 filing on June 6, 2018, including a request for penalty abatement.

16.    RSBCO appeared via telephone at a Collections Due Process hearing with the IRS Appeals Division Settlement Officer Thomas J. Wroble on June 13, 2018 where RSBCO requested that the Penalty be abated.

17.    The IRS denied RSBCO's request to fully abate the Penalty.

18.    On November 19, 2018, RSBCO paid the Penalty plus interest, totaling $579,198.[37] (again, the "Penalty").

19.     On December 21, 2018, RSBCO satisfied the requirements of I.R.C. § 7422(a) by timely filing a Form 843 Claim for Refund and Request for Abatement ("Original Refund Claim") with the IRS in Ogden, Utah.

20.     A copy of the Original Refund Claim is attached as <u>Exhibit A</u> and incorporated herein by reference.

21.     The IRS did not make (and still has not made) a determination on RSBCO's Original Refund Claim.

22.     After waiting more than six (6) months after filing the Original Refund Claim, RSBCO filed suit ("Original Suit"). *See, RSBCO v. USA* (W.D. La. Monroe Div. 2019); 3:19-cv-01138.

23.     During the litigation of the Original Suit, RSBCO sought to amend and supplement its claims, which was met with a "variance" objection by the USA.

24.     The Hon. Magistrate Judge Hayes ultimately agreed with the USA's "variance" objection and suggested that RSBCO restart the administrative process,[1] as follows:

> In its opposition brief, the government remarked that plaintiff's ability to raise this new ground for refund is not completely foreclosed because RSBCO could dismiss the instant suit and file a new refund claim with the IRS that included all of plaintiff's grounds for refund.  (Def. Opp., pg. 7).  In response, plaintiff argued that starting over would prove futile because apparently the IRS has lost the existing record.  (Pl. Reply Brief, pg. 6-7).  However, if the government has misplaced plaintiff's original claim, then it might be in RSBCO's best interest to restart the claim process.  While the court certainly appreciates RSBCO's frustration with any further delay, the opportunity for another bite at the apple may inure to RSBCO's benefit.  Indeed, if the IRS is able to actually consider all grounds for refund, RSBCO might prevail at the administrative level without having to return to court.  Accordingly, the possibility for relief following another claim for refund should not be lightly discounted.

25.     Based on this order, RSBCO and the USA jointly dismissed the Original Suit without prejudice and with all rights (both administratively and civilly) reserved by RSBCO. *See, Id.* @ Doc.#28 ("Judgment of Dismissal Without Prejudice")

---

[1] *See*, Original Suit; Doc. #25; p. 10.

26.     Thereafter, on or about September 28, 2020 RSBCO filed a revised administrative complaint with the IRS ("Revised Refund Claim").

27.     The Revised Refund Claim is attached hereto as <u>Exhibit B</u>, and its contents are constructively incorporated as if re-alleged in full.

28.     <u>Exhibit B</u> was received by the IRS on or about September 28, 2020, as shown by the proofs of receipts/deliveries attached hereto as <u>Exhibit C</u>, which are also incorporated herein by reference.

29.     <u>Exhibit B</u> was sent to the appropriate address.

30.     More than 6 months have passed since <u>Exhibit B</u> was both mailed by RSBCO and received by the IRS.

31.     No administrative decision has been rendered in response to <u>Exhibit B</u>.

32.     Accordingly, this civil suit based upon <u>Exhibit A</u> and <u>Exhibit B</u> is ripe.

<u>FACTS</u>

33.     During the 2012 tax period, RSBCO relied on Employee X to manage RSBCO's information return filing obligations with the IRS as RSBCO had relied on Employee X since his employment.

34.     Before utilizing Employee X for this duty as well as other functions, RSBCO received his resume which confirmed that he had a Bachelor's in Finance and an MBA. The resume further noted Employee X's work history in the same field with no terminations, suspensions or unsatisfactory performance noted.

35.     After receiving Employee X's resume, RSBCO then obtained releases which permitted RSBCO to obtain Employee X's credit history, fingerprints and work records with prior companies.

36.     Further, RSBCO also requested and obtained reference letters from third-parties who favorably recommended Employee X.

37.     After receiving this information, RSBCO thoroughly interviewed Employee X.

38.     After hiring Employee X, RSBCO put Employee X through an initial orientation providing him with the company procedures, a company handbook and a written job description. Employee X was also properly notified on the chain-of-command at RSBCO and was told to whom he should report any issues.

39.     In short, Employee X was provided with more than satisfactory information, training, supervision, office space, and office support.

40.     Initially, Employee X appeared to perform well, received a promotion, raises and additional financial compensation, as evidenced by the following non-exclusive particulars: (A) On or about January 7, 2013, Employee X's base salary was increased from $92,700 to $96,000 based on him having "performed at a high level in 2012." (B) On or about May 24, 2013, Employee X passed the Securities Operations II Exam with The Cannon Financial Institute with a score of 91%, where the average grade was 85%. (C) On or about June 5, 2013, Employee X was awarded an additional $1,000 interim bonus.

41.     For the tax period ending 2012, RSBCO, by and through Employee X, filed 21,574 information returns (again, referred to herein as the "Information Returns") with the Service using the Filing Information Returns Electronically system (the "FIRE System").

42.     The Information Returns were timely filed on April 1, 2013 in six separate batches as evidenced by an April 5, 2013 email sent by the FIRE System (the "FIRE Email").

43.     The FIRE Email indicated that 20,328 of the Information Returns returned a "BAD" status.

44.     According to the Internal Revenue Manual, a "BAD" file means "the file contained errors and needs to have a replacement . . . ."

45.     As the manager of these filings, Employee X was the sole recipient of the FIRE Email detailing the "BAD" file statuses.

46.     The FIRE Email directed Employee X to correct the allegedly offending "BAD" returns and resubmit them as replacements.

47.     Although RSBCO had no contemporaneous knowledge of it, Employee X was at this time grappling with depression and marital troubles, which unfortunately affected his ability to satisfy his duties in fulfilling RSBCO's information return obligations.

48.     Due to Employee X's mental health issues and the fact that the "BAD" notice was sent only to him and only via email with no time required for response, Employee X temporarily delayed addressing the alleged failures in properly filing the Information Returns.

49.     It should be noted that none of these notices from the IRS set forth a specific time period within which the corrected returns should be re-filed.

50.     Once again, no one else with RSBCO was even aware that the Information Returns had allegedly not been properly filed the first time, let alone aware of the email notices.

51.     Employee X corrected the allegedly corrupted files (again, before anyone else with RSBCO even knew of the issue) and uploaded them to the FIRE System on or about July 16 and 17, 2013.

52.     This upload was approximately 42 days after the end of the 60-day period replacement file period outlined in Section 4.06 of IRS Publication 1220.

53.     At no point prior to this incident did Employee X ever seem unsure as to what his job functions were, nor did he ever indicate that he was not properly performing his job.

54.     However, over a year later, Employee X was terminated from employment on November 12th, 2014 for underperformance and failing to perform his duties.

55.     Shortly after Employee X's termination, several notices from the IRS (many of them unopened) were discovered in his desk.

56.     Again, no one associated with RSBCO or employed by any of RSBCO's affiliates, other than Employee X, had any knowledge of these notices. One such notice was the August 4, 2014 notice related to the Penalty.

57.     At all times, Employee X's supervisor and the rest of RSBCO's management team remained accessible to Employee X. However, for reasons completely beyond the

knowledge or control of RSBCO, Employee X failed to notify his supervisor or anyone else within RSBCO's management team of the issues identified herein.

58.      Before the incident described herein involving Employee X, RSBCO had for years filed substantial numbers of separate returns without significant deficiencies.

59.      And since the incident described herein involving Employee X, RSBCO and its affiliates have filed well over 100,000 separate returns without significant deficiencies or issues.

CLAIMS

Claim #1: 8th Amendment Violation

60.      Amendment VIII to the U.S. Constitution states "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

61.      The Penalty assessed against RSBCO in this matter is not a measured response to the subject conduct.

62.      Specifically, RSBCO has paid $579,198.[37] for the allegedly late re-filing of purely informational returns.

63.      The facts at issue show that there was no: (i) misrepresentation made by RSBCO; (ii) financial harm caused to the Government or any third-party; or (iii) financial benefit incurred by RSBCO.

64.      The only error here was *de minimis* in nature.

65.      Therefore, the Penalty violates the 8th Amendment's prohibition of excessive fines and cruel/unusual punishment.

Claim #2: No Statutory Authority

66.      The Penalty was assessed under 26 U.S.C.A § 6721 which authorizes the imposition of penalties when original returns are not "timely filed."

67.      Here, the original returns were timely filed.

68.     Restated, here the resubmissions are the only documents that were allegedly untimely filed by RSBCO.

69.     There is no legislative authority to impose penalties for allegedly late re-filings or allegedly late re-submissions – only for originals.

70.     Accordingly, the Penalty was imposed with no legislative basis, and it should be voided accordingly.

<u>Claim #3: *De minimis* Error = Safe Harbor</u>

71.     The Filing Information Returns Electronically system (the "FIRE System") documents suggest that the alleged primary error associated with the original filing was evidently the unnecessary inclusion of the following: 

72.     Here is a screenshot of the error message produced by the USA in the Original Suit:

| Error Code | Message |
|---|---|
| 48 | Payment Amount Field(s) contains a negative amount (minus ' -') in the left-most position of the Payment Amount Field or a negative over punch which is only valid for Form 1099-B/1099-OID/1099-Q (Loss) reporting. Refer to Publication 1220 or contact your software company or service provider for further information. |

73.     That is correct: a ***<u>dash</u>*** appears to be the primary cause behind the original rejection and, in turn, the assessment of the Penalty.

74.     Such *de minimis* informational failures are not punishable. *See* again, § 6721, providing "Safe harbor for certain *de minimis* errors" where informational returns are filed with the Secretary but do not have any meaningful discrepancy in the dollar amount stated versus the dollar amount owed, stating that in these circumstances "such return shall be treated as having been filed with all of the correct required information" and no penalties may be rendered.

<u>Claim #4: Reasonable Cause</u>

75.     RSBCO had a qualified employee (again referred to herein for privacy purposes as "Employee X") who was properly trained and supervised to prepare and file the subject returns.

8

76.     However, RSBCO was unaware that Employee X was grappling with severe emotional issues during the subject time.

77.     Because of this illness, Employee X went rogue by neglecting his duty to resubmit the subject informational returns.

78.     Employee X has since been terminated and RSBCO has taken all appropriate precautions to help further safeguard against future similar incidents.

79.     Notably, the deficiency notices from the IRS were not mailed to RSBCO; instead, they were emailed only to Employee X – the very employee in sole control of the allegedly erroneous initial filing.

80.     Finally, RSBCO has had no similar material failure to file or resubmit informational returns before or since the subject incident involving Employee X.

81.     I.R.C. § 6724(a) provides penalty relief where a taxpayer's failure to make accurate and timely information filings is due to reasonable cause and not willful neglect. Events arising from beyond the taxpayer's control qualify as a reasonable cause for such penalty abatement. *See,* Treas. Reg. § 301.6724-1(a)(2)(ii).

82.     In addition to suffering from events beyond the taxpayer's control, to qualify for penalty abatement under I.R.C. § 6724(a), the taxpayer must have also exercised reasonable care in regards to its filing duties, including resolving the impeding event and rectifying any failures arising therefrom. *See,* Treas. Reg. §§ 301.6724-1(c)(1), (d)(1).

83.     As shown in the facts outlined above, RSBCO can point to both impediments and/or mitigating factors which establish that the Information Returns were the product of a reasonable cause and not willful neglect.

84.     RSBCO retained Employee X to ensure its reporting and information return obligations to the IRS were met. However, Employee X's depression and marital troubles affected his ability to perform his duties for RSBCO, including filing the Information Returns.

85.     Employee X's actions and omissions regarding the Information Returns were in contravention of his duties and responsibilities to RSBCO, and, accordingly, outside of RSBCO's control. Employee X's concealment of both his failure to timely file the corrected Information Returns and the notices related thereto from the IRS were also beyond RSBCO's control.

86.     Employee X's actions, although caused by mental health issues, were a betrayal to company policy. It is important to remember that no other officer, director, or employee of RSBCO in any way contributed to or caused the untimely resubmission of information returns either through direct action or inaction.

87.     RSBCO exercised reasonable care in regards to its filing obligations by retaining Employee X to manage these responsibilities. Employee X's actions, however, subverted RSBCO's intention to comply with its obligation without RSBCO's knowledge until after the fact.

88.     RSBCO properly responded to the issues surrounding Employee X's job performance by terminating his employment.

89.     "Willful neglect" in the context of tax penalties means a "conscious, intentional failure or reckless indifference" to not fulfill an underlying tax obligation. *U.S. v. Boyle*, 469 U.S. 241, 245 (1985) (interpreting similar waivers for penalties under I.R.C. § 6651).

90.     RSBCO knew of its filing responsibilities and took professional, practical, and prudent measures to comply by retaining Employee X to handle these responsibilities, however, Employee X subverted these intentions.

91.     The unforeseeable actions and illness of Employee X do not and should not equate RSBCO's actions as "conscious, intentional failure or reckless indifference" or willful neglect.

92.     Employee X's actions were due to psychological problems beyond the control of RSBCO, which should negate any allegation of willfulness on RSBCO's part.

93.     Even with the issues confronting Employee X, he did file the Information Returns timely, but the USA alleges these filings contained either incorrect information or information was corrupted by the software.

94.     Further, Employee X eventually re-submitted the filings, albeit allegedly 42-days late. These actions also demonstrate that RSBCO's actions were not the product of "willful neglect."

95.     Accordingly, RSBCO has reasonable cause for the corrected information reporting failures in tax period 2012, and thus RSBCO respectfully requests a full refund of the $579,198.[37] amount paid in connection with this tax period.

<u>Claim #5: Attorney Fees</u>

96.     RSBCO is entitled to attorney fees and court costs in this litigation, along with all costs and attorney fees associated with the Original Refund Claim and the Original Suit. *See*, 26 U.S.C. § 7430.

<u>Claim #6: Bad-Faith</u>

97.     Based on representations made in brief by the Government, this Court previously suggested that RSBCO dismiss the Original Suit (without prejudice) and restart the administrative process,[2] as follows:

> In its opposition brief, the government remarked that plaintiff's ability to raise this new ground for refund is not completely foreclosed because RSBCO could dismiss the instant suit and file a new refund claim with the IRS that included all of plaintiff's grounds for refund.   (Def. Opp., pg. 7).   In response, plaintiff argued that starting over would prove futile because apparently the IRS has lost the existing record.   (Pl. Reply Brief, pg. 6-7).   However, if the government has misplaced plaintiff's original claim, then it might be in RSBCO's best interest to restart the claim process.   While the court certainly appreciates RSBCO's frustration with any further delay, the opportunity for another bite at the apple may inure to RSBCO's benefit.   Indeed, if the IRS is able to actually consider all grounds for refund, RSBCO might prevail at the administrative level without having to return to court.   Accordingly, the possibility for relief following another claim for refund should not be lightly discounted.

---

[2] *See*, Original Suit; Doc. #25; p. 10.

11

98.     The Court's logic was sound. Indeed, the administrative process should be an ideal time and venue to resolve disputed issues.

99.     However – for the second time – RSBCO has participated in the administrative process and – despite the passage of no less than 875 days – the Government has not provided a meaningful response of any kind to RSBCO.[3]

100.    RSBCO respectfully submits that the administrative process could and should be a valuable opportunity for claim resolution. However, as implemented by the Government, it has served as nothing more than a basis for delay.

101.    The Government's handling of RSBCO's administrative claims is relevant because the level of disregard and/or willful neglect exhibited by the Government far outweighs any alleged misconduct by the rogue Employee X.

102.    RSBCO respectfully submits that the Government's handling of the Original Refund Claim and the Revised Refund Claim amounts to bad-faith under even its own standards, policies, and procedures.

103.    RSBCO prays for a trial by jury.

<u>PRAYER</u>

RSBCO respectfully prays for a judgment on all issues outlined herein by motion or trial by jury (whichever comes first), including but not limited to the following:

(i)      RSBCO respectfully prays for judgment against Defendant and respectfully asks the Court to order Defendant to refund to RSBCO the amount of $579,198.[37] plus interest, or such other amounts as in law and in fact, are ultimately recoverable, plus costs allowed by law.

(ii)     Attorney fees under 26 U.S.C. § 7430.

---

[3] Other than form correspondence advising receipt of <u>Exhibits A and B</u>.

(iii)    Declaratory relief that the Penalty was imposed: (a) in violation of Amendment VIII of the U.S. Constitution; (b) without statutory authority; (c) despite its *de-minimis* nature; and/or (d) despite the existence of reasonable cause.

(iv)    RSBCO also requests that the Court grant it such further relief, legal or equitable, to which it may be entitled.

Respectfully submitted by counsel for RSBCO:

*s/Russell A. Woodard*
Russell A. Woodard (13360)
Woodard & Clement
114 N Trenton St.
Ruston, LA 71270
O: 318.255.4898 F: 318.255.4897
russell@woodardclement.com

*s/Russell A. Woodard, Jr.*
Russell A. Woodard, Jr. (34163)
Law Offices of Russell A. Woodard, Jr. LLC
114 N Trenton St.
Ruston, LA 71270
O: 318.255.4898 F: 318.255.4897
RAW@therawlaw.com