UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

R S B C O                                    CASE NO.  3:21-CV-01192

VERSUS                                       JUDGE TERRY A. DOUGHTY

U S A                                        MAG. JUDGE KAYLA D. MCCLUSKY

MEMORANDUM RULING

Pending before the Court are cross-motions for summary judgment filed by Plaintiff

RSBCO [Doc. No. 41] and by Defendant USA ("the Government") [Doc. No. 38]. Oppositions

[Doc. Nos. 45 and 46] and Replies [Doc. Nos. 50 and 51] have been filed by the parties.

For the reasons set forth herein, the Government's Motion for Summary Judgment [Doc.

No. 38] is GRANTED IN PART and DENIED IN PART.  RSBCO's Motion for Summary

Judgment [Doc. No. 41] is DENIED.

I.    BACKGROUND

RSBCO filed a Complaint [Doc. No. 1] on May 5, 2021. This Complaint is a second suit

by RSBCO against the Government[1].  The Government took no action on RSBCO's revised

administrative complaint, which resulted in the present lawsuit.

In its Complaint, RSBCO is seeking a refund with respect to $579,198.37 RSBCO paid in

federal tax penalties to the Internal Revenue Service ("IRS") as a result of the filing of erroneous

Information Returns.  The Information Returns were corrected and submitted to the IRS on July

18, 2013.  However, the Information Returns were not corrected until forty-two days after the

deadline, which resulted in the IRS system assessing penalties totaling $510,700.  Of this

---

[1] The first suit, No. 3:19-cv-01138, was dismissed without prejudice so RSBCO could file a revised administrative complaint with the Government.

amount, $10,700.00 was for missing or incorrect tax ID numbers, and the sum of $60.00 per return was assessed for late re-filing of the corrected informational returns.  There were over 21,000 informational returns that were subject to the penalty, so a statutory cap limitation of $500,000.00 was assessed.

On or about April 1, 2013, RSBCO employee Gregory Smith ("Employee X") filed informational returns with the IRS using the IRS's "FIRE" system.  The FIRE system is an electronic portal that taxpayers use to transmit required informational returns.

RSBCO explained that it timely filed the subject Information Returns for the 2012 tax year on April 1, 2013, in six separate batches. However, in contrast to prior years, the FIRE System had returned 94.22% of the filings as "BAD." File number 0003 (contained 18,890 payees), 0005 (contained 360 payees) and 0006 (contained 1078 payees), that showed "error codes" when filed.  Due to the error codes, the informational returns were deemed "unprocessable" by the FIRE system.[1] RSBCO surmised that the batches likely contained systemic errors in information or were corrupted.  RSBCO stated that it relied on Employee X to help file the Information Returns via the FIRE System. After two subsequent reminder emails sent from the FIRE System, Employee X eventually corrected the files and uploaded them to the FIRE System on or about July 17-18, 2013. After the files were corrected and filed on July 18, 2013, the FIRE System sent an email on August 4, 2013, with a Form 972 CG Notice which indicated that unless RSBCO responded within forty-five days to dispute the penalty, the FIRE System will systematically assess the penalty.  There was no response by RSBCO and on October 12, 2014, the FIRE System automatically assessed the penalties at issue.[1]

Unfortunately for RSBCO, all of the FIRE System emails were sent only to Employee X. Employee X did not correct the unprocessed returns until July 18, 2013.  After the penalty was assessed, Employee X never responded to the August 4, 2013, Form 972CG notice.  RSBCO

alleges that it was completely unaware there was a problem with the FIRE System, or that any penalties had been assessed, until the notices were found in Employee X's desk shortly after Employee X was terminated (for unrelated reasons) on November 12, 2014.[2]

RSBCO maintains that during the time Employee X filed the informational returns and/or received the IRS notices, Employee X was grappling with depression, mental troubles, marital troubles, and taking medication which affected Employee X's ability to satisfy his job duties.[3]

Employee X's deposition was taken on March 18, 2022.  Employee X was familiar with the FIRE System and properly filed informational returns which were due in March 2012, after Employee X was hired by RSBCO as operations manager.[4]  Employee X stated he did not recall ever seeing the emails from the IRS indicating the original filings were deficient, or that RSBCO was being assessed penalties.[5]

Employee X stated that problems developed that kept him from carrying out his duties at RSBCO.  Employee X testified he began feeling overwhelmed and was taking anti-depressants.  Employee X testified he did not communicate the problems he was having to RSBCO.[6]

After RSBCO became aware of the IRS penalties, RSBCO filed a Form 843 Claim for Refund and Request for Abatement.  According to RSBCO, the IRS did not make, and still has not made, a decision on this claim.[7]  After the first suit was filed, RSBCO agreed to dismiss the first suit, without prejudice, in order to allow the IRS to review RSBCO's revised administrative complaint.  However, the IRS never acted on RSBCO's revised administrative complaint, which resulted in RSBCO filing the present lawsuit.

---

[2] Declaration of David Kyle McDonald [Doc. No. 41-3].
[3] Id.
[4] Deposition of Greg Smith.
[5] Id.
[6] Id.
[7] Declaration of David Kyle McDonald [Doc., No. 41-3].

The claims at issue in the cross-motions for summary judgment are:

1) Whether the penalties and assessments by the IRS to RSBCO violated the Eighth Amendment's "excessive fines" clause;

2) Whether the IRS has authority to impose the penalties under 26 U.S.C. § 6721; and

3) Whether the mental health issues Employee X had during the time of the filing of informational returns and penalties constituted "reasonable cause" pursuant to 26 U.S.C. § 6724.

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is

unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

 In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B.    Eighth Amendment Claims

RSBCO maintains the fines/penalties imposed by the Government violate the Eighth Amendment to the United States Constitution prohibition of excessive fines and/or cruel and

unusual punishment. RSBCO argues that fines of $579,198.37 for the alleged late re-filing of purely Information Returns violates the Eighth Amendment because there was no misrepresentation, no financial harm, or financial benefit to RSBCO.

The Eighth Amendment to the U.S. Constitution states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

In order to be subject to the "excessive fines" clause of the Eighth Amendment, the sanction must be both (1) a fine; and (2) excessive.[8]  A sanction is a "fine" if it is payment to a sovereign as punishment for some offense.  The determinative question is whether or not the forfeiture is punishment.[9]  An IRS penalty of 50% of the amount of the tax due was found to be remedial and, therefore, not subject to the "excessive fines" clause.[10]  The Court of Appeals for the Fifth Circuit has held that a civil penalty for failure to file an informational return is analogous to the federal fraud penalty at issue and was purely remedial.[11] [12]

It is clear that penalties for filing informational returns with the IRS are remedial in nature and not subject to the "excessive fines" clause of the Eighth Amendment.  Because the penalty is remedial, no analysis is necessary whether the penalty was excessive.  The Government's Motion for Summary Judgment [Doc. No. 38] is GRANTED as to this issue. RSBCO's Motion for Summary Judgment [Doc. No. 41] is DENIED as to this issue.

---

[8] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).
[9] *Austin v. United States*, 509 U.S. 602 (1993).
[10] *Helvering v. Mitchell*, 303 U.S. 391 (1938).
[11] *Bickham Lincoln Mercury Inc. v. U.S.*, 168 F.3d 790 (5th Cir. 1999).
[12] See also *In re: Wyly* 552 B.R. 338, 613 (2016).

### C.      Statutory Authority[13]

In RSBCO's Motion for Summary Judgment [Doc. No. 41-2], RSBCO maintains the IRS

does not have the authority to penalize RSBCO pursuant to 26 U.S.C. § 6721(a)(2)(A) which

reads:

> (a) Imposition of penalty. –
>
> (1) In general. – In case of a failure described in paragraph (2) by any
> person with respect to an informational return, such person shall pay a
> penalty of $250 for each return with respect to which such failure occurs,
> but the total amount imposed on such person for all failures during any
> calendar year shall not exceed 3,000,000.
> (2) Failures subject to penalty. – For purposes of paragraph (1), the
> failures described in this paragraph are –
>
>> (A) any failure to file an informational return with the Secretary on or
>> before the required filing date, and
>>
>> (B) any failure to include all of the information required to be shown
>> on the return or the inclusion of incorrect information.

RSBCO's argument is that, except for the $10,700 penalty, the remainder was based upon

failure to timely "re-file" the Information Returns.  In other words, the Information Returns were

timely filed on April 1, 2013, and it was the untimely re-filing on July 18, 2013, that was the

problem.  Because the statute only states the word "file" and not "re-file", RSBCO argues the

IRS does not have authority to impose the penalty.

The Government points out that Section (a)(2)(B) of 26 U.S.C. § 6721 also allows the

IRS to impose a penalty for failing to provide all of the information required to be shown on the

return or inclusion of incorrect information. Additionally, the Government argues that the

regulation implementing the applicable statute, specifically 26 C.F.R. § 301.6721-1(a)(2)(ii),

states failure to include information in the correct electronic format may either be a failure to

---

[13] RSBCO maintains the Court has already decided this issue, however, this Court's prior ruling [Doc. No. 28] did
not decide this issue, only required evidence to determine the issue.

timely file an informational return, or a failure to include correct information on an informational

return, and "an error on a magnetic media submission to the IRS that prevents processing."

It is undisputed that over 21,000 of the informational returns that were filed with the IRS

FIRE System on April 1, 2013, were designated by the IRS as containing errors which kept the

IRS from processing them.

According to Karen Carroll,[14] when the RSBCO files were submitted via the FIRE

System, file numbers 0003, 0005, and 0006 contained errors.  File 0003, which contained

informational returns on 18,890 payees, had two error codes, #48 and #62.  Error code #48

showed twenty-one (21) of the payment amount fields had a negative number.  Error code #62

showed two (2) of the informational returns did not contain a control total that matched the

records.

File 0005 also contained error codes #48 showed three (3) errors and # 62 showed one (1)

error.  File 0006 contained error code #52, which showed some of the informational returns were

not properly identifying their affiliation to a specific type of retirement.  Account according to

Karen Carroll, these errors prevented IRS from processing the informational returns for the files

that had errors.

Title 26 U.S.C. § 6721 is not ambiguous. Even though RSBCO did file the informational

returns timely, section (a)(2)(B) applies because failure to include all the information required

resulted in error codes.  Additionally, regulation 26 C.F.R. § 301.6721-1(a)(2)(ii) clarifies that

failure to include correct information includes "an error on a magnetic media submission to the

IRS that prevents processing."  The Government's Motion for Summary Judgment [Doc. No. 38]

---

[14] Deposition of Karen Carroll [Doc. No. 38-3].

is GRANTED as to this issue.  RSBCO's Motion for Summary Judgment [Doc. No. 41] is

DENIED as to this issue.

### D.      Reasonable Cause

Due to the problems Employee X had with depression and/or medication, RSBCO alleges

that its failure to timely file the informational returns was due to "reasonable cause" pursuant to

26 U.S.C. § 6724.  The pertinent portion of that statute reads:

> (a) Reasonable cause waiver. – No penalty shall be imposed under this
> part with respect to any failure if it is shown that such failure is due to
> reasonable cause and not willful neglect.

Reasonable cause is not defined in the Statute, but is defined in regulation 26 C.F.R. §

301.6724-1, which reads in pertinent part:

> (a) Waiver of the penalty –
>
> (1) General rule.  The penalty for a failure relating to an information
> reporting requirement (as defined in paragraph (i) of this section) is
> waived if the failure is due to reasonable cause and is not due to willful
> neglect.
>
> (2) Reasonable cause defined.  The penalty is waived for reasonable
> cause only if the filer establishes that either –
>
> (i) There are significant mitigating factors with respect to the failure, as
> described in paragraph (b) of this section; or
>
> (ii) The failure arose from events beyond the filer's control
> (impediment"), as described in paragraph (c) of this section.
>
> Moreover, the filer must establish that the filer acted in a responsible
> manner, as described in paragraph (d) of this section, both before and
> after the failure occurred.  Thus, if the filer establishes that there are
> significant mitigating factors for a failure but is unable to establish that
> the filer acted in a responsible manner, the mitigating factors will not be
> sufficient to obtain a waiver of the penalty.  Similarly, if the filer
> establishes that a failure arose from an impediment but is unable to
> establish that the filer acted in a responsible manner, the impediment will
> not be sufficient to obtain a waiver of the penalty.  See paragraph (g) of

this section for the reasonable cause safe harbor for persons who exercise due diligence.

(b) Significant mitigating factors.  In order to establish reasonable cause under this paragraph (b), the filer must satisfy paragraph (d) of this section and must show that there are significant mitigating factors for the failure.  The mitigating factors include, but are not limited to –

(1) The fact that prior to the failure the filer was never required to file the particular type of return or furnish the particular type of statement with respect to which the failure occurred, or

(2) The fact that the filer has an established history of complying with the information reporting requirement with respect to which the failure occurred.  In determining whether the filer has such an established history, significant consideration is given to –

(i) Whether the filer has incurred any penalty under §§ 301.6721-1, 301.6722-1, or 301.6723-1 in prior years for the failure (or under parallel provisions of prior law), and

(ii) If the filer has incurred any such penalty in prior years, the extent of the filer's success in lessening its error rate from year to year.

A filer may treat as a penalty not incurred any penalty under sections 6721 through 6723 that was self-assessed under section 6724(c)(3) and any penalty under section 6676(b) that was self-assessed under section 6676(d), prior to amendment or repeal by the Omnibus Budget Reconciliation Act of 1989.  See paragraph (c)(5) of this section for the application of this paragraph (b) to failures attributable to the actions of a filer's agent.

(c) Events beyond the filer's control –

(1) In general.  In order to establish reasonable cause under this paragraph (c)(1), the filer must satisfy paragraph (d) of this section and must show that the failure was due to events beyond the filer's control. Events which are generally considered beyond the filer's control include but are not limited to –

(i) The unavailability of the relevant business records (as described in paragraph (c)(2) of this section),

(ii) An undue economic hardship relating to filing on magnetic media (as described in paragraph (c)(3) of this section),

(iii) Certain actions of the Internal Revenue Service (as described in paragraph (c)(4) of this section),

(iv) Certain actions of an agent (as described in paragraph (c)(5) of this section, and

(v) Certain actions of the payee or any other person providing necessary information with respect to the return or payee statement (as described in paragraph (c)(6) of this section).

(d) Responsible manner –

(1) In general.  Acting in a responsible manner means –

(i) That the filer exercised reasonable care, which is that standard of care that a reasonably prudent person would use under the circumstances in the course of its business in determining its filing obligations and in handling account information such as account numbers and balances, and

(ii) That the filer undertook significant steps to avoid or mitigate the failure, including, where applicable –

(A) Requesting appropriate extensions of time to file, when practicable, in order to avoid the failure,

(B) Attempting to prevent an impediment or a failure, if it was foreseeable,

(C) Acting to remove an impediment or the cause of a failure, once it occurred, and

(D) Rectifying the failure as promptly as possible once the impediment was removed or the failure was discovered.  Ordinarily, a rectification is considered prompt if it is made within 30 days after the date the impediment is removed or the failure is discovered or on the earliest date thereafter on which a regular submission of corrections is made. Submissions will be considered regular only if made at intervals of 30 days or less.  A failure may be rectified by filing or correcting the information return, furnishing or correcting the payee statement, or by providing or correcting the information to satisfy the specified information reporting requirement with respect to which the failure occurs.  Paragraph (d)(ii)(D) of this section does not apply with respect to information the filer is prohibited from altering under specific information reporting rules.  See § 1.6045-4(i)(5) of this chapter.

11

There is no claim that RSBCO's failure to timely file the informational returns was due to willful neglect, so the issue is whether the failure of RSBCO to file the informational returns was due to "reasonable cause."

In accordance with 26 C.F.R. § 301.6724-1, RSBCO must establish:

> 1) there are "significant mitigating factors" with respect to the failure to timely file the informational returns; and

> 2) RSBCO acted in a responsible manner both before and after the failure occurred.

Each of these two elements will be analyzed individually.

(i) Significant mitigating factors

Pertinent examples of significant mitigating factors in 26 C.F.R. § 301.6724-1(b) include that RSBCO had an established history of complying with filing of the informational requirements and whether RSBCO has incurred any penalty in prior years.

According to RSBCO's account transcript summary,[15] RSBCO was penalized by the IRS in tax years 2009, 2010, 2011, 2012, and 2015, but it received no penalties for tax years 2013, 2014, 2016, 2017, 2018, 2019, 2020, and 2021.

RSBCO also argues that after the 2012 tax year, it made changes in its reporting system, which yielded very good results after the 2012 tax year.[16]  These changes included terminating Employee X.[17]  It is also noted by RSBCO that in tax year 2012, Argent (RSBCO is a nominal partnership for Argent) had 4,000 to 5,000 accounts and over $2 billion dollars in client assets, so RSBCO was filing thousands of informational returns each year.[18]

---

[15] [Doc. No. 45, pp. 15].
[16] Declaration of David Kyle McDonald [Doc. No. 41-3].
[17] Id.
[18] Deposition of David Kyle McDonald [Doc. 38-4].

However, the primary argument being made by RSBCO is that Employee X had serious mental health issues that RSBCO was not aware of, which resulted in Employee X failing to properly file the informational returns for tax year 2012.  RSBCO further argues it had no idea Employee X was having mental health issues, or that Employee X had failed to file the informational returns properly.  RSBCO maintains it was unaware that penalties had been assessed against it until it found the IRS notices in Employee X's desk after he had been terminated in November 2014.[19]

(ii) Responsible manner

In order for "reasonable cause" to apply, RSBCO must also establish that it acted in a responsible manner both before and after the failure occurred.  RSBCO maintains it did. Employee X graduated from Howard Payne University in Business Administration with a focus on finance.  He also received an MBA in Management from Texas A&M.  Prior to working for RSBCO, Employee X worked in the trust department for American Express Financial Advisors, Amarillo National Bank, and T-Bank.

When he was hired as operations manager by RSBCO in May 2011, he was overseeing the day-to-day operations of the trust department.  Part of his job was filing the informational returns, and he was familiar with the FIRE System.[20]

Employee X was hired by RSBCO after being interviewed by three members of RSBCO. Employee X received training in filing the informational returns by Kim Breithaupt; was sent to school for trust operations training and was successfully able to file the informational returns his

---

[19] Deposition of David Kyle McDonald [Doc. No. 41-3].
[20] Deposition of Greg Smith [Doc. No. 38-5].

first year.[21]  After this incident occurred, RSBCO paid the penalty, made changes which have resulted in avoiding this type of incident happening again, and terminated Employee X.[22]

On the other hand, the Government maintains RSBCO did not act in a responsible manner both before and after the incident, arguing that Employee X was not properly trained, that no safeguards were in place to monitor the filing of informational returns, and that Employee X should not have been the only employee monitoring the filing of the informational returns.

None of the parties provided this Court with any detail regarding Employee X's mental health issues.  Employee X admitted he had anxiety and was taking unknown medication during the time of the informational return filing.  Nevertheless, no medical information was provided to this Court detailing these alleged health issues.  However, RSBCO has provided sufficient information for the trier of fact to determine whether RSBCO's failure to properly file the informational returns was due to "reasonable cause."

There exist material issues of fact as to whether RSBCO had "reasonable cause" under 26 U.S.C. § 6724.  Therefore, both motions for summary judgment **are DENIED as to this issue.**

## III.   CONCLUSION

**For the reasons set forth herein, the Government's Motion for** Summary Judgment [Doc. No. 38] is GRANTED IN PART and DENIED IN PART.  RSBCO's Motion for Summary Judgment [Doc. No. 41] is DENIED.

MONROE, LOUISIANA, this 6th day of June 2022.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

---

[21] Deposition of David Kyle McDonald [Doc. No. 38-4].
[22] Id.

14