# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

July 17, 2024

Mr. Daniel J. McCoy
Western District of Louisiana, Monroe
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

     No. 23-30062   R S B C O v. USA
                USDC No. 3:21-CV-1192

Dear Mr. McCoy,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                     Sincerely,

                     LYLE W. CAYCE, Clerk

                     *Shea E. Pertuit*
       By: _____
             Shea E. Pertuit, Deputy Clerk
             504-310-7666

cc:
     Mr. Paul Andrew Allulis
     Mr. Bruce Raleigh Ellisen
     Mr. Russell A. Woodard Jr.

# United States Court of Appeals
# for the Fifth Circuit

No. 23-30062

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2024

Lyle W. Cayce
Clerk

Certified as a true copy and issued
as the mandate on Jul 17, 2024

Attest:

Clerk, U.S. Court of Appeals, Fifth Circuit

R S B C O,

*Plaintiff—Appellee,*

*versus*

UNITED STATES OF AMERICA,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:21-CV-1192

Before SMITH, GRAVES, and WILSON, *Circuit Judges.*

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is VACATED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

# United States Court of Appeals
# for the Fifth Circuit

––––––––––––––––

No. 23-30062

––––––––––––––––

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2024

Lyle W. Cayce
Clerk

R S B C O,

*Plaintiff—Appellee*,

*versus*

United States of America,

*Defendant—Appellant*.

––––––––––––––––––––––––––––––––––

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:21-CV-1192

––––––––––––––––––––––––––––––––––

Before Smith, Graves, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

A jury awarded RSBCO a refund of its payment of an IRS-imposed penalty for failure to file timely information returns. The district court then awarded RSBCO attorney fees and costs. The Government appeals, asserting that the jury instructions were erroneous, and that the district court abused its discretion in awarding attorney fees and costs. Because the jury instructions were irredeemably flawed, we vacate the verdict and remand for a new trial. And because RSBCO is no longer the prevailing party, we also vacate the attorney fees and costs awarded to RSBCO.

No. 23-30062

## I.

RSBCO is a limited-partnership subsidiary of Argent Financial Group, a wealth management firm. For the 2012 tax year, RSBCO was required to file with the IRS more than 21,000 annual information returns. Gregory Smith, Argent's operations manager, was responsible for electronically filing RSBCO's returns through the IRS's Filing Information Returns Electronically (FIRE) system by March 31, 2013. Treas. Reg. § 1.6045-1(p).

Smith attempted to file RSBCO's returns the day they were due. Days later, however, the FIRE system sent Smith an automated message that certain of the files containing the returns had errors that prevented them from being processed and that RSBCO was required to send replacement files. The FIRE system thereafter sent two additional reminder emails to Smith. On July 16 and 17, 2013, Smith filed corrected returns that were accepted and processed.

Over a year after Smith filed the corrected returns, the IRS sent RSBCO a notice of proposed penalties for the delay in filing processable 2012 returns. The notice made clear that RSBCO was entitled to dispute the penalty if it believed its failure was due to reasonable cause. RSBCO did not respond to the notice. Instead, RSBCO asserts it was unaware of the notice until it was discovered in Smith's desk after Smith was terminated in November 2014. In October 2015, almost a year after RSBCO discovered the notice of proposed penalties in Smith's desk, the IRS actually assessed penalties against RSBCO for $510,700 ($500,000 for the late filing of 20,328 returns, and $10,700 for filing 107 returns with incorrect information).

When the IRS sent RSBCO a notice of intent to levy in January 2018, RSBCO requested a hearing and asserted a reasonable cause defense. After the telephonic hearing, the IRS offered to concede 25% of the penalty

amount, but RSBCO instead paid the penalties and accrued interest in full and filed an administrative refund claim for $579,198.37, grounded on the same reasonable cause defense. The IRS failed to act on the claim within six months, so RSBCO filed a complaint for a refund in federal district court, again asserting reasonable cause for its untimely filings. That suit was voluntarily dismissed, and RSBCO filed a second administrative refund claim. When the IRS again failed to act timely, RSBCO filed this action in district court, in May 2021. After extensive motions practice, including denied cross-motions for summary judgment, the question of whether RSBCO had reasonable cause for its filing delay, as defined in Treas. Reg. § 301.6724-1, was tried before a jury.

RSBCO's primary trial contention was that its failure to file was caused by Smith's clinical depression—an event beyond RSBCO's control. Smith testified that he suffered from clinically diagnosed depression in 2013, and as a result, he had been suicidal and struggled to focus and complete tasks at work. Specifically, Smith's depression inhibited him from properly filing RSBCO's 2012 information returns.

The jury returned a verdict for RSBCO, finding that RSBCO established that it had acted in a responsible manner and that there were either significant mitigating factors or events beyond RSBCO's control that contributed to its failure to file timely returns. The Government orally moved for judgment as a matter of law at trial's end. The Government additionally filed a renewed motion seeking either judgment as a matter of law or a new trial. The district court denied the Government's motions.

The district court then granted RSBCO's post-trial motion for attorney fees. The court determined that the Government could "not overcome the presumption that it was not substantially justified" in denying RSBCO's refund claim "because [the IRS] did not follow its applicable

No. 23-30062

published guidance[.]"  The district court awarded fees at a rate exceeding the statutory rate provided in I.R.C. § 7430(c)(1)(B)(iii), finding that "special factors" were present.

The Government appeals, challenging both the jury verdict as based on faulty instructions, and the award of attorney fees and costs.

## II.

We review challenges to jury instructions for abuse of discretion and afford the trial court great latitude in framing those instructions.  *In re 3 Star Props., L.L.C.*, 6 F.4th 595, 609 (5th Cir. 2021) (citation omitted).  A party challenging jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations."  *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997) (citation and internal quotation marks omitted).  However, "even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case."  *Id.* (citation omitted).

"This court reviews a district court's attorneys' fee awards for abuse of discretion."  *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008) (citation omitted).

## III.

The Government raises two issues:  (A) whether the district court's jury instructions on "reasonable cause" were erroneous;[1] and (B) whether

---

[1] RSBCO argues that because the IRS "did not even object to the final jury instructions at trial on the record[,]" it has waived any objection to the final instructions on appeal.  RSBCO is incorrect.  Filing written objections suffices to preserve for appellate review objections to jury instructions, even when a party "d[oes] not lodge oral on-the-record objections . . . when invited to do so by the trial court."  *Bender v. Brumley*, 1 F.3d 271, 277 (5th Cir. 1993); *see also Lang v. Tex. Pac. Ry. Co.*, 624 F.2d 1275, 1279 (5th Cir.

4

the district court abused its discretion in awarding attorney fees and costs to RSBCO. We resolve each issue in the Government's favor.

## A.

We begin with the regulatory background governing RSBCO's obligation to file third-party information returns. *See* I.R.C. § 6045. In 2013, filers like RSBCO that were required to file more than 250 information returns had to do so electronically using the IRS's FIRE System by March 31 for the 2012 tax year. Treas. Reg. § 301.6011-2(b)–(c); § 1.6045-1(p). Penalties were (and still are) assessed for "any failure to file an information return . . . on or before the required filing date." I.R.C. § 6721(a)(2). Failure to file a processable return within 30 days after the due date resulted in a penalty of $60 per return. *Id.* § 6721(b)(2)(A) (as amended in 2010). The maximum amount imposed on a delinquent 2012 filer was capped at $500,000. *Id.* § 6721(b)(2)(B) (as amended in 2010).

A filer is not liable for penalties if it can show that its failure to file timely was "due to reasonable cause and not willful neglect." *Id.* § 6724(a)(1). Reasonable cause exists if the filer establishes either that "there are significant mitigating factors with respect to the failure . . . or the

---

1980) ("[T]he failure to object may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing.") (citation omitted). The record is clear that the Government lodged strenuous objections to the instructions at issue. The parties and the district court also discussed the court's rulings on the jury instructions on the record, and in an off-the-record conference in chambers. Thus, as in *Bender*, the "lack of another in-court objection . . . d[oes] not defeat [the Government's] ability to challenge the instructions on appeal. 1 F.3d at 277.

No. 23-30062

failure arose from events beyond the filer's control ([an] impediment)." Treas. Reg. § 301.6724-1(a)(2)(i)–(ii).[2]

The law does not define "mitigators." However, the relevant rule provides at least some context:

> [M]itigating factors include, but are not limited to—
>
> (1) The fact that prior to the failure the filer was never required to file the particular type of return or furnish the particular type of statement with respect to which the failure occurred, or
>
> (2) The fact that the filer has an established history of complying with the information reporting requirement with respect to which the failure occurred. In determining whether the filer has such established history, significant consideration is given to—
>
> (i) Whether the filer had incurred any penalty under [the I.R.C.] in prior years for the failure . . . and
>
> (ii) if the filer has incurred any such penalty in prior years, the extent of the filer's success in lessening its error rate from year to year.

Treas. Reg. § 301.6724-1(b).

Treasury Regulation § 301.6724-1(c)(1) also delineates certain "events beyond the filer's control," i.e., impediments, that may excuse untimely filing:

> Events which are generally considered beyond the filer's control include but are not limited to—

---

[2] The filer must establish that it "acted in a responsible manner . . . both before and after the failure occurred." *Id.* § 301.6724-1(a)(2)(iii). The jury found that RSBCO had acted responsibly, and the Government does not challenge that finding on appeal.

No. 23-30062

> (i) The unavailability of the relevant business records (as described in paragraph (c)(2) of this section),
>
> (ii) An undue economic hardship relating to filing on magnetic media . . .
>
> (iii) Certain actions of the [IRS] . . .
>
> (iv) Certain actions of an agent (as described in paragraph (c)(5) of this section), and
>
> (v) Certain actions of the payee or any other person providing necessary information with respect to the return or payee statement . . . .

Section 301.6724-1(c)(5), in turn, cabins which "actions of an agent" qualify as impediments to proper filing:

> Actions of agent—imputed reasonable cause. In order to establish reasonable cause under paragraph (c)(1) of this section due to actions of an agent, the filer must show the following:
>
> (i) The filer exercised reasonable business judgment in contracting with the agent . . . ; and
>
> (ii) The agent satisfied the reasonable cause criteria set forth in paragraph (b) [i.e., "mitigating factors"] or one of the reasonable cause criteria set forth in paragraph (c)(2) through (6) of this section.

And § 301.6724-1(c)(2), addressing "unavailability of the relevant business records," pinpoints our focus in this case because it is the only other subsection of § 301.6724-1(c) implicated by the facts here. It provides:

> In order to establish reasonable cause . . . due to the unavailability of the relevant business records, the filer's business records must have been unavailable under such conditions, in such manner, and for such period as to prevent timely compliance (ordinarily at least a 2–week period prior to

the due date . . . of the required return . . . ), and the unavailability must have been caused by a supervening event. A "supervening event" includes, but is not limited to—

. . .

(iii) The unavoidable absence (e.g., due to death or serious illness) of the person with the sole responsibility for filing a return or furnishing a payee statement.

*Id.* § 301.6724-1(c)(2).

With this background in mind, we must examine the jury instructions on mitigators and impediments given by the district court, with a view toward answering the following questions: First, were the jury instructions legally erroneous? If so, could the error have affected the case's outcome? To reverse, we must answer both questions in the affirmative. *See Johnson*, 120 F.3d at 1315.

### 1.

As for the first prong of the "reasonable cause" analysis—whether there were "significant mitigating factors with respect to" RSBCO's failure to file timely—the district court gave the following instruction:

RSBCO must have undertaken significant steps to avoid or mitigate failing to file the information returns on time. Those steps might include attempting to prevent an impediment or failure, if it was foreseeable; acting to remove the impediment or the cause of the failure; or fixing the failure as quickly as possible once the impediment was removed or the failure was discovered.

The law does not define Mitigators. However, a mitigator is generally defined as "something that lessens the gravity of an offense or mistake."

The Government contends that the court's "mitigators" instruction gave the jury too much latitude to determine that RSBCO established reasonable cause because "none of the mitigators asserted by RSBCO concerned its filing history[.]" More specifically, the Government maintains that (1) it was error to include *any* instruction on mitigators, as no evidence was introduced regarding RSBCO's filing history; and (2) regardless, applying the *ejusdem generis* canon,[3] the instruction should have "limited mitigators to factors related to the filer's filing history[.]" In contrast, by allowing the jury "to consider 'anything that lessen[ed] the gravity of [RSBCO's] offense,' the court allowed the jury to consider factors well outside the limited scope of the regulation." The Government reasons that, because the relevant Treasury Regulation only provides examples of mitigators related to a filer's history, that regulation cabins the universe of "mitigators" to similar factors.

The Government's reasoning rests on a faulty premise. To be sure, mitigators "include" a filer's filing history. *See* Treas. Reg. § 301.6724-1(b)(1)–(2). But "the word 'includes' is usually a term of enlargement, and not of limitation." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 527 (5th Cir. 2005) (internal brackets and citation omitted). It thus runs contrary to the regulation's text to suggest that its prefatory phrase "includ[ing], but not limited to" only *limits* mitigating factors to those like the enumerated examples that follow it.

The Government's reliance on the *ejusdem generis* canon does not salvage its argument. Courts employ this canon "[w]hen confronted with a list of specific terms that ends with a catchall phrase" to "limit the catchall

---

[3] "*Ejusdem generis*" literally means "of the same kind or class." Bʟᴀᴄᴋ's Lᴀᴡ Dɪᴄᴛɪᴏɴᴀʀʏ, *ejusdem generis* (11th ed. 2019).

phrase to 'things of the same general kind or class specifically mentioned.'" *United States v. Clark*, 990 F.3d 404, 408 (5th Cir. 2021) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012)); *see also Huntington Ingalls, Inc. v. Dir., Off. of Workers' Compen. Programs, U.S. Dept. of Lab.*, 70 F.4th 245, 254 (5th Cir. 2023) (same). But here, the regulation on mitigators does not list "specific terms followed by general terms" in enumerating examples of "mitigating factors." To the contrary, the regulation employs the phrase "including, but not limited to" *before* listing examples of mitigators. That structure suggests that the examples provided are only a subset of mitigators encompassed by the rule, and "mitigating factors" are therefore not limited only to those related to filing history.

A jury instruction on mitigators was therefore well-taken, even without evidence of RSBCO's filing history. On substance, the district court generally defined "mitigator" as "something that lessens the gravity of an offense or mistake." Nothing in that definition is inconsistent with § 301.6724-1(b)(1)–(2). The district court's "mitigators" instruction, in isolation, thus does not create "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Johnson*, 120 F.3d at 1315 (citation omitted). But there is a fly in the ointment, in this instruction's interplay with the court's instruction on "impediments," as measured against the framework of Treasury Regulation § 301.6724-1(c). We turn there next.

## 2.

Reasonable cause for untimely filing can also be established if there were "events beyond the filer's control," i.e., impediments to filing. The district court provided the following instruction on impediments:

No. 23-30062

The law does not define Impediments. However, an impediment is generally defined as "a hindrance or obstruction in doing something." And the IRS provides examples of Impediments potentially warranting a Reasonable Cause refund or waiver including but not limited to:

**(i)** Actions of the filer's agent. ("Events which are generally considered beyond the filer's control include but are not limited to: (iv) Certain actions of an agent . . .").

**(ii)** The death, serious illness, or unavoidable absence of the filer. ("Death, Serious Illness or Unavoidable Absence—Death, serious illness, or unavoidable absence of the taxpayer, or a death or serious illness in the taxpayer's immediate family, may establish reasonable cause for filing.")

The Government argues that this instruction was erroneous in two respects: It incorrectly states the law regarding the allowable actions of an agent; and it likewise misstates the law regarding "unavoidable absence" "due to death or serious illness of the person with the sole responsibility for filing a return[.]" RSBCO disagrees, contending that the district court appropriately defined "impediments" based on its "plain and ordinary meaning," and that Smith's depression substantially impeded RSBCO. The Government's challenge is well-taken because, overlaid against the framework of Treasury Regulation § 301.6724-1(c), the court's impediments instruction is both overbroad and oversimplified.

The instruction is overbroad because, after "generally defin[ing]" "impediment" as "a hindrance or obstruction in doing something," it states without qualification that "examples of Impediments potentially warranting a Reasonable Cause refund or waiver includ[e] but [are] not limited to . . . [a]ctions of the filer's agent." The instruction recites part of § 301.6724-1(c)(1)(iv) ("Certain actions of an agent . . ."), but the district court nowhere else explained to the jury which "certain actions" could

constitute impediments consonant with the regulation's fairly intricate parameters. Yet plainly not every action of a filer's agent excuses improper filing; § 301.6724-1(c)(5)(ii) makes clear that only those that fall within § 301.6724-1(b) or § 301.6724-1(c)(2)–(6) qualify.[4] By giving such an open-ended instruction, stripped of any of this nuance, the court freed the jury to find that any of Smith's actions that constituted "a hindrance or obstruction" to RSBCO's timely filing "warrant[ed] a Reasonable Cause refund" as an impediment under the regulation. This was error.

It was also error for the instruction to state that the "death, serious illness, or unavoidable absence of the filer" constituted an "example[] of [an] Impediment[] potentially warranting a Reasonable Cause refund" under the regulation. Again, comparing the instruction's language with the text of § 301.6724-1(c) brings into clear view the instruction's oversimplifying conflation of what is required for an agent's actions to comprise an allowable impediment.

First, "death, serious illness, or unavoidable absence of the filer" is not included as an "example" of a cognizable impediment in § 301.6724-1(c)(2)–(6). Instead, "death, serious illness, or unavoidable absence of the filer" is enumerated only as a "supervening event" justifying the "unavailability of the relevant business records," as articulated in § 301.6724-1(c)(2):

> In order to establish reasonable cause ... due to the unavailability of the relevant business records, the filer's business records must have been unavailable under such

---

[4] There is no evidence in the record that Smith took any "mitigating" actions, i.e., that "lessen[ed] the gravity of an offense or mistake," as the court's instruction put it, that would fall within § 301.6724-1(b); indeed, it is factually inconsistent that Smith's incapacity could be both a "mitigating factor" and an "impediment" to excuse RSBCO's late filing. So we focus on Smith's actions that could fit within § 301.6724-1(c)(2)–(6).

conditions, in such manner, and for such period as to prevent timely compliance . . . , and the unavailability must have been caused by a supervening event. A "supervening event" includes, but is not limited to—

. . .

(iii) The unavoidable absence (e.g., due to death or serious illness) of the person with the sole responsibility for filing a return or furnishing a payee statement.

In other words, Smith's incapacity, alone, was not a sufficient basis to excuse RSBCO's late filing, contrary to what the district court's impediments instruction suggests. To the extent the jury was allowed to find otherwise, the instruction was flawed.

Beyond that, the instruction omitted any mention of the other considerations discussed in § 301.6724-1(c)(2). This compounded its oversimplification. As just discussed, the instruction did not correctly identify an "example" of an impediment that was both at issue in the case and articulated in the regulation. Assuming that Smith's incapacity caused the "unavailability of the relevant business records" so as to frustrate RSBCO's timely filing, the instruction omitted any mention that those records "must have been unavailable under such conditions, in such manner, and for such period as to prevent timely compliance (ordinarily at least a 2-week period prior to the due date . . . )," and that "the unavailability must have been caused by" Smith's incapacity, as "a supervening event." Treas. Reg. § 301.6724-1(c)(2). Again, the instruction, by erroneously conflating the regulation's requirements, allowed the jury to find that Smith's serious depression, standing alone, established reasonable cause.

No. 23-30062

Instead of substantiating that Smith's illness caused the unavailability of its business records as contemplated by § 301.6724-1(c)(2),[5] RSBCO counters that the Treasury Regulation's enumerated list of impediments is not exhaustive, much like its list of mitigating factors. *See id.* § 301.6724-1(b), (c)(2)–(6). RSBCO reasons that the Government "ignore[s] the 'includ[ing] but not limited to' modif[ier]" to restrict allowable "impediments" in derogation of traditional rules of statutory construction. Properly considered, Smith's illness may thus qualify as an impediment standing alone. The district court agreed with RSBCO.

True enough, § 301.6724-1(c)(1), like § 301.6724-1(b), contains a prefatory clause that the "[e]vents which are generally considered beyond the filer's control *include but are not limited to*" the enumerated list that follows (emphasis added), and the Government concedes that § 301.6724-1(c)(2)–(6)'s list of impediments is not exclusive. Even so, the Government maintains that because the given instruction's two examples of impediments "were derived (imperfectly) from provisions in the regulations" and dovetailed with RSBCO's theory that its failure to file timely returns was caused by its agent Smith's depression, RSBCO was required to satisfy the regulation's enumerated requirements. We agree.

*Bloate v. United States*, 559 U.S. 196 (2010), is instructive. In *Bloate*, the Court considered the effect of the phrase "including but not limited to" that preceded a list of eight categories of delays contained in the Speedy Trial Act, 18 U.S.C. § 3161. 559 U.S. at 208–09. The Court determined that the list was "illustrative rather than exhaustive[,]" in view of the prefatory

---

[5] To be clear, RSBCO argues that "Smith . . . concealed . . . the IRS penalty notices." But these purportedly hidden penalty notices merely evidence the penalties stemming from RSBCO's failure to file timely, processable returns; they are not RSBCO's "business records" of the sort necessary to effectuate filing in the first instance.

qualifier. *Id.* at 208. But that deduction "in no way undermine[d]" the conclusion that a "delay that falls *within* the category of delay addressed by [the subparagraph at issue] is governed by the limits in that subparagraph." *Id.* (emphasis in original).

Granting that § 301.6724-1(c)(2)–(6)'s list of events "beyond a filer's control" is illustrative rather than exhaustive, RSBCO's proffered interpretation of the regulation, to allow Smith's illness to qualify as an unenumerated impediment, nonetheless collapses of its own weight. The reason is that "death, serious illness, or unavoidable absence of the filer" is expressly included in the regulation not as an "impediment," but as a "supervening event" justifying one—the "unavailability of the relevant business records." *See* § 301.6724-1(c)(2)(iii). That suggests that the regulation excludes a filer's "unavoidable absence" as a stand-alone impediment in its own right. To read the text otherwise, as RSBCO urges, would render certain of the regulation's provisions contradictory, or surplusage. *See* § 301.6724-1(c)(5) (stating that for a filer "to establish reasonable cause . . . due to actions of an agent, the filer *must show*" that the agent met one of the criteria set forth in either § 301.6724-1(b) or (c)(2)–(6) (emphasis added)); *In re Crocker*, 941 F.3d 206, 220 (5th Cir. 2019) (noting that "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme") (quoting *Marx v. Rev. Gen. Corp.*, 568 U.S. 371, 386 (2013)).

Regardless, the jury instruction at issue, which tracks RSBCO's theory of the case that Smith's incapacity caused RSBCO's filing delay, also falls directly within § 301.6724-1(c)(2)'s ambit. It follows that the instruction should have fully delineated what RSBCO was required to prove for "actions of an agent," or the "unavoidable absence (e.g., due to . . . serious illness)" of the filer, to have impeded RSBCO from timely filing processable returns. *See Bloate*, 559 U.S. at 208. By contrast, the instruction as given glosses over

No. 23-30062

the regulation's granularity, creating "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Johnson*, 120 F.3d at 1315 (citation omitted).

### 3.

To recap, the district court did not reversibly err in instructing the jury as to "mitigators." But it did by incompletely and incorrectly delineating allowable "impediments." Still, this court will not disturb a verdict based on erroneous instructions unless the "challenged instruction could [] have affected the outcome of the case." *Id.* (citation omitted). To answer that question, we must examine the interrogatory verdict form the jury completed in reaching its verdict for RSBCO. Doing so, this court "must reconcile answers on a verdict form when there is a basis to do so," but that reconciliation must be "logical and probable[.]" *Team Contractors, L.L.C. v. Waypoint Nola, L.L.C.*, 976 F.3d 509, 513 (5th Cir. 2020). When we "cannot discover the exact basis" of the jury's verdict because "the verdict is capable of comprehending any one of a number of theories of liability," we must "remand for a new trial[.]" *Jamison Co., Inc. v. Westvaco Corp.*, 530 F.2d 34, 37 (5th Cir. 1976); *cf. United States v. Hankton*, 51 F.4th 578, 591–92 (5th Cir. 2022) (vacating conviction and remanding for further proceedings when "[t]he verdict form did not require the jury to specify which predicate offense or offenses it relied upon" to convict defendants of 18 U.S.C. § 924 offenses).

Eschewing the parties' proposed verdict forms,[6] the district court instead presented the jury with this two-question verdict form:

---

[6] RSBCO offered a two-question general verdict form. The Government objected to RSBCO's proposed verdict form and proposed a three-question special verdict form

No. 23-30062

Do you the jury find that RSBCO has established:

1.  That it acted in a responsible manner before and after the subject incident?

. . .

2.   That there were either significant mitigating factors offsetting any wrongdoing by RSBCO (Mitigators), and/or that there were events beyond RSBCO's control that contributed to the subject incident (Impediments)?

The jury checked "Yes" in response to both questions.

And therein lies the problem. The jury's response to the second question in the completed jury verdict form does not allow us to decipher whether the jury found that there were "significant mitigating factors" to excuse RSBCO's failure to file timely—based on the sound jury instruction on mitigators—or that "there were events beyond RSBCO's control" that impeded timely filing—based on the unsound one on impediments—or, that there were both. If the first or third possibility, we could affirm, based on the adequacy of the "mitigators" instruction. But the second possibility is fatally flawed, as discussed *supra*. Given the form's single yes-or-no question as to mitigators "and/or" impediments, there is no way logically to reconcile the verdict form to contain the improper instruction. Thus, the "challenged instruction could [well] have affected the outcome of the case," *Johnson*, 120 F.3d at 1315 (citation omitted), so we must vacate the verdict and remand for a new trial.

---

pursuant to Federal Rule of Civil Procedure 49(a). That form posed individual questions on mitigators, whether RSBCO acted responsibly, and impediments.

No. 23-30062

## B.

Because the verdict must be set aside, it follows that the district court's award of $235,762.50 to RSBCO for its attorney fees and costs must likewise be vacated. Internal Revenue Code § 7430(a)(1)–(2) allows the "prevailing party" to recover "reasonable administrative costs" and "reasonable litigation costs incurred in connection" with a proceeding "brought . . . against the United States . . . [for a] refund of any tax, interest, or penalty" under the Internal Revenue Code. Should RSBCO again prevail, the district court is of course free to reconsider whether to award its attorney fees and costs. We forecast no result on either eventuality.[7]

## IV.

The district court's jury instruction as to "impediments" that would excuse RSBCO's untimely filing of its 2012 information returns is fatally inconsistent with the governing Treasury Regulation. Because the resulting jury verdict may have been grounded on that improper instruction, we must vacate the verdict and remand for further proceedings. Necessarily, we also must vacate the district court's award of attorney fees and costs.

VACATED AND REMANDED.

---

[7] We note that the substantially prevailing party in tax litigation is entitled to an award of costs and attorney fees unless the Government can establish that its litigation position was "substantially justified." I.R.C. § 7430(c)(4)(B)(i); *see Heasley v. C.I.R.*, 967 F.2d 116, 120 (5th Cir. 1992) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Government's position is *rebuttably* presumed unjustified "if the [IRS] did not follow its applicable published guidance . . . ." I.R.C. § 7430(c)(4)(B)(ii). In awarding fees and costs here, the district court concluded that the IRS did not follow the Taxpayer Bill of Rights and the Internal Revenue Manual. But prior to the district court's decision, no court appears to have viewed the Taxpayer Bill of Rights as "applicable published guidance," and this court has foreclosed the notion that the Internal Revenue Manual is "legally binding[,]" as it "do[es] not create rights in the taxpayer." *Est. of Duncan v. C.I.R.*, 890 F.3d 192, 200 (5th Cir. 2018) (citations omitted).